AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>)  Case No.   363M<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ❐ evidence of a crime;
  ❐ contraband, fruits of crime, or other items illegally possessed;
  ❐ property designed for use, intended for use, or used in committing a crime;
  ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

  *Code Section*                                          *Offense Description*

The application is based on these facts:

  ❐ Continued on the attached sheet.
  ❐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
      18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                                      *Christopher Thiel*
                                                      Applicant's signature

                                                      _____
                                                      *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: _____                               [signature]
                                                      *Judge's signature*

City and state: _____                    _____
                                                      *Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Christopher Thiel, a Special Agent with the United States Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

**INTRODUCTION AND AFFIANT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search an Apple iPhone with a black phone case recovered on the bed within the master bedroom of 7 Carolyn Court, Dover, DE which is labeled as DEA exhibit N-35 ("TARGET DEVICE"). The TARGET DEVICE is currently stored at DEA's office in Dover, Delaware. The TARGET DEVICE is further described in Attachment A.

2. I am a Special Agent with the Drug Enforcement Administration and have been since April 2019. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and Federal Rule of Criminal Procedure 41, and am empowered by law to conduct investigations of, and to make arrests for, offenses in Titles 18 and 21 of the United States Code. I attended the new agent training program at the DEA Academy in Quantico, Virginia. I have received on-the-job training in narcotics trafficking, conspiracy, and distribution investigations. I have participated in certain aspects of drug investigations, including the use of confidential sources and undercover officers, acting in an Undercover capacity, physical surveillance, electronic surveillance, testifying in court, the execution of search and arrest warrants, the use of court-ordered intercepts of wire communications and investigative interviews. Since September 2020, I have been assigned to the Dover, Delaware Post of Duty of the Philadelphia Division of the DEA, where I have been responsible for investigating drug, violent crime, and criminal enterprise offenses. During my career in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. I have participated in

1

numerous search warrants, which has led to the collection of valuable evidence, fruits, and instrumentalities of drug trafficking.

3. As a federal agent, I am authorized to investigate violations of laws of the United States. I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4. There is probable cause to believe that Martin Fountain ("FOUNTAIN") has violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Distribution of Controlled Substances and Possession With Intent to Distribute a Controlled Substance); 21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 922(g)(1) (collectively, the "TARGET OFFENSES"). FOUNTAIN has been indicted on one count of conspiracy to distribute controlled substances and one count of possession with the intent to distribute a controlled substance. *See*, 23-cr-49, D.I. 18. FOUNTAIN is scheduled to go to trial on January 3, 2025.

5. The TARGET DEVICE was recovered on May 17, 2023, in FOUNTAIN's master bedroom at 7 Carolyn Court, Dover, DE. Martin FOUNTAIN was first seen by law enforcement exiting the master bedroom where the TARGET DEVICE was recovered and was subsequently placed in custody. There is probable cause to believe that the TARGET DEVICE contains evidence, fruits, or instrumentalities of the TARGET OFFENSES. Specifically, there is probable cause that the TARGET DEVICE was a phone that FOUNTAIN used to coordinate drug transactions. There is also probable cause that the TARGET DEVICE was used to communicate with co-conspirators, to include Dwayne FOUNTAIN who is a named co-conspirator in the indictment.

6. The statements contained in this affidavit are based on information and reports provided by federal, state, and local law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; the

2

results of physical surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents and analysts; and my experience, training, and background as a Special Agent.

7. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that FOUNTAIN has committed the TARGET OFFENSES and that evidence, fruits, and instrumentalities of those offenses will be found on the TARGET DEVICE.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offenses being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### A. Initiation of Investigation

9. In June of 2022, the Drug Enforcement Administration ("DEA), the Delaware State Police ("DSP"), and the Dover Police Department ("DPD") initiated a joint criminal investigation into a large-scale narcotics enterprise in New Castle and Kent County Delaware. During the investigation, several narcotics distributors were identified, including Martin FOUNTAIN.

10. Between January and May of 2023, law enforcement made direct buys, controlled buys, conducted surveillance, obtained GPS Warrants, Pen and Ping Warrants, Historical Cell Site Warrants, debriefed Confidential Sources and Cooperating Defendants, and intercepted the communications of Dwayne FOUNTAIN and Martin FOUNTAIN, along with other investigative steps.

11. The investigation revealed that Martin FOUNTAIN used a cell phone number of 302-943-8985 to communicate with drug associates. Grand jury subpoena returns connected the 302-943-8985 number to an Apple iPhone 6S with IMEI 353339075975222. This make and model of iPhone is consistent with the TARGET DEVICE recovered from FOUNTAIN's home.

12. FOUNTAIN's 302-943-8985 phone number was subject to a federal wiretap, discussed below.

### B. Arrest of FOUNTAIN and recovery of TARGET DEVICE

13. On May 17, 2023, law enforcement executed multiple search warrants as a part of the wiretap case. Relevant to the TARGET DEVICE was a search of a residence at 7 Carolyn Court, Dover, Delaware – Martin FOUNTAIN's residence where he was also arrested. Within the residence, specifically hidden in the master bathroom, were glassine bags containing fentanyl, along with crack cocaine located inside of a Chezz-it box as well as within a black plastic bag. Additional crack cocaine was also recovered from the residence. Within the master bedroom, two phones were also recovered, to include a grey cell phone on the nightstand and the TARGET DEVICE, an Apple iPhone, on the master bed.

### C. Evidence of the TARGET DEVICE being used for drug trafficking and discussion of firearms

14. As noted above, the TARGET DEVICE is consistent with the device utilizing FOUNTAIN's 302-943-8985 phone number, which was subject to a federal wiretap. The wiretap of FOUNTAIN's number began on March 24, 2023.

15. Throughout the wiretap investigation there was evidence that FOUNTAIN was utilizing the 302-943-8985, i.e. the TARGET DEVICE, to conduct and facilitate drug deals with other members of the conspiracy and his drug trafficking organization (DTO).

16. As an overview, between January 2023 and March 2023, the DEA conducted three controlled purchases between a confidential source (CS) and Martin FOUNTAIN. FOUNTAIN

utilized the 302-943-8985 number to orchestrate the deals. While setting up the three controlled buys, law enforcement had the opportunity on multiple occasions to witness the confidential source (CS) contact FOUNTAIN at the 302-943-8985 number.[1] In each instance where the CS communicated with FOUNTAIN, surveillance officers subsequently observed FOUNTAIN meet with the CS and conduct what was consistent with a hand-to-hand drug transaction. Each of the three times the CS returned to law enforcement with drugs, specifically, suspected fentanyl.

17. Additionally, over the course of the wiretap investigation, FOUNTAIN utilized the 302-943-8985 number to discuss drug and gun sales both through texts and calls.

18. Relevant to this search warrant, the wiretap intercepted a call between FOUNTAIN and an individual known as Junior MARKS on April 11, 2023. The pertinent portion of that conversation was as follows:

| | |
|---|---|
| M. FOUNTAIN: | [U/I]. |
| MARKS: | Alright, you just said the word. I didn't [U/I]. |
| M. FOUNTAIN: | Uh- |
| uh. MARKS: | [U/I]. |
| M. FOUNTAIN: | Right. |
| MARKS: | So, you on the brand-new too. |
| M. FOUNTAIN: | Uh- did they uhm-? [Smacks lips] I'm tryna think. What's the uhm- what, what exactly is, is it? |
| MARKS: | Uhm, "nina"— |
| M. FOUNTAIN: | Huh? |
| [Voices overlap] | |
| MARKS: | Douce- three (3)- five (5)- seven (7). |
| M. FOUNTAIN: | What's the math? |
| MARKS: | It's 200 dollars. |
| M. FOUNTAIN: | Eight (8)? |
| MARKS: | Yeah, the douce, the douce [U/I]. |
| M. FOUNTAIN: | [Chuckles] Shit! Man, that's outrageous, dawg [PH]. |
| MARKS: | The nine (9), that's a dollar. The 3-57, that's a nine (9). |
| [Pause] | |
| M. FOUNTAIN: | Yeah, them numbers- them numbers are astronomical. |

---

[1] For all controlled purchases referenced law enforcement followed protocols to include searching the CS before and after the drug transaction, providing the CS with buy money, following the CS to the meet location, and monitoring the transaction, finally law enforcement follows the CS after the drug deal to recover the drugs and ensure no additional contraband is present.

5

| | |
|---|---|
| MARKS: | Really? |
| M. FOUNTAIN: | Yeah. 'Cause I just- I just uh, uh-uh glizzy nine. I just grabbed for five (5), a brand new K [PH] in the case- two (2), two (2) uh, accessories that go wit it- all the cleanin' equipment and everythin' in the case— |
| MARKS: [Laughs]. | |
| M. FOUNTAIN: | — fo- for- I'm, I'm being serious. You know I'm sayin', fo- fo— |
| [Voices overlap] | |
| MARKS: | Yo, listen, listen to me. Yo, can you plug me in? [Chuckles] |
| M. FOUNTAIN: | Shit! [U/I] I catch 'im. You know I catch 'im. Uh, that's not like a regular thing. When cats come through, I grab 'em. |
| MARKS: | Is it uh-uh- uh. |
| [Voices overlap] | |
| M. FOUNTAIN: | You know what I'm sayin'? Did, did the other joint, I might still have pictures on my phone. Nah, I probable erased 'em shit. Then, I had a- a- a four and an half. You know I'm sayin'? Uh-uh. |
| [Voices overlap] | |
| MARKS: | Yeah. |
| M. FOUNTAIN: | Grabbed that for six-50. But, then I had- I let it go for seven 7- 50. You know I'm sayin'? The one I grabbed for five, I let that go for seven. You know what I'm sayin'? The same day, 'cause that's how I cats be on em. But, the numbers you talkin ain't nobody it ain't nobody going for that. |
| MARKS: | Shit. |
| M. FOUNTAIN: | I can't- I can't get no- I can't even get money off of that, 'cause I'm not- I don't hoard. I let 'em go. |
| MARKS: | I got- I got- I see whatchu doin'- I see whatchu doin'— |
| [Voices overlap] | |
| M. FOUNTAIN: | Yea, yea, yea, yeah, I let 'em go. |
| [Voices overlap] | |
| MARKS: | But, I- I- I unders- I understand your play. I understand your play. |
| M. FOUNTAIN: | Yeah, yeah, no doubt, but- you know. |
| [Voices overlap] | |
| MARKS: | Well, say no more, then. You know, I mean, just- I'm just letting you know they- they brand new the box. |
| M. FOUNTAIN: | Right, no doubt. Yea, yea, yea. As it should be. |
| MARKS: | A'ight. |
| [Voices overlap] | |
| M. FOUNTAIN: | That's the only way I'mma, that's the only way I'mma ugh I'mma get it anyway. I don't need no. You know what I mean? |
| MARKS: | Yeah, say no— |
| [Voices overlap] | |
| M. FOUNTAIN: | I don't know what, who did, what- the what was what [Sounds like]. [Laughs] |
| MARKS: [Laughs] | Gotchu, gotchu, gotchu. |
| [Voices overlap] | |

| | |
|---|---|
| M. FOUNTAIN: | Yeah. A'ight, well good luck, doe. |
| MARKS: | Yeah, no problem. |
| M. FOUNTAIN: | Yup. |

19. Based on your affiants training and experience as well as from information learned through the investigation, MARKS contacted FOUNTAIN in an attempt to sell him two firearms. MARKS described the firearms by mentioning a "nina", which your affiant knows refers to a 9mm handgun. FOUNTAIN states he does not like the price and that he had purchased firearms recently that came in the case with accessories.

20. Roughly ten days prior, on March 30, 2023, starting at 10:35 p.m., FOUNTAIN had a text conversation with Durrell PATTON – a charged codefendant in the case. The pertinent portion of the text messages are as follows:

| | |
|---|---|
| POWELL: | yo |
| M. FOUNTAIN: | yo |
| POWELL: | Bout to send u something on duo |
| M. FOUNTAIN: | (flexing arm emoji[11]) |
| POWELL: | no audio |
| POWELL: | U get it |
| M. FOUNTAIN: | Yeah (two flexing arm emojis, two gorilla emojis, and two 100 emojis) |
| POWELL: | On the market |
| M. FOUNTAIN: | $ |
| POWELL: | Brown 6 |
| POWELL: | Black 450 |
| POWELL: | $1050 |
| POWELL: | Yea |
| M. FOUNTAIN: | Ok I'll let you know in the a.m., I think I got a play for em both |
| POWELL: | Ok let me know |
| M. FOUNTAIN: | ASAP |

21. Based on your affiant's training and experience, although law enforcement did not intercept the picture that POWELL sent FOUNTAIN, agents believe in context the photo was of two firearms. This belief is based on how POWELL described the guns, the price, and FOUNTAIN's response of "I think I got a play for em both" which in your affiants training and experience means that FOUNTAIN had a buyer for both firearms.

7

22. On April 7, 2023, agents observed charged co-conspirator Dwayne FOUNTAIN going to Martin FOUNTAIN's residence at Carolyn Court. After the meeting, Martin FOUNTAIN contacted a female and conducted a drug transaction with her. Before the drug deal, FOUNTAIN's calls were intercepted with the female where they discussed where to meet. Subsequent surveillance at the discussed location was conducted and FOUNTAIN was observed meeting with a female where FOUNTAIN handed over an item consistent with a drug transaction. The female then sent a text message to FOUNTAIN stating, "(two thumbs up emojis) best hard candy I had in a few weeks, don't get me wrong it's some other candy out here but this is different and really good shit I can't talk Lol hahaha that's why I sent this letter." Based on your affiants training and experience along with the intercepted calls and surveillance, I believe FOUNTAIN used his phone to coordinate the sale of crack cocaine ("hard candy") to the female.

23. On April 10, 2023, at approximately 8:28 p.m., FOUNTAIN had the following text conversation with a female known as Christina MITCHELL. The pertinent portion of the conversation is as follows:

| | |
|---|---|
| MITCHELL: | Hey where u at I need a half one |
| MITCHELL: | Yo it's Christina u around |
| M. FOUNTAIN: | yup |
| MITCHELL: | Need half one where u at |
| M. FOUNTAIN: | Same place |
| MITCHELL: | OK I'm on way |
| MITCHELL: | I got a question do u have any needles? Or can u find any |
| M FOUNTAIN: | No |
| MITCHELL: | Ok I'm on way |
| MITCHELL: | B in same truck |
| M FOUNTAIN: | (Flex Arm emoji) |

24. Based on my training and experience, MITCHELL is requesting a half a "log" of fentanyl (half one) – which was corroborated by a later seizure of that amount of fentanyl from MITCHELL after surveillance observed FOUNTAIN and MITCHELL conduct a drug deal shortly after the above text conversation and stopped MITCHEL with approximately sixty-five bags

8

(approximately five bundles) and fentanyl.[2]

25. On April 17, 2023, FOUNTAIN utilized his phone number to call Michael BARNES. The pertinent portion of the conversation is as follows:

| | |
|---|---|
| M. FOUNTAIN: | Yo |
| BARNES: | Hey I need one loaf |
| M. FOUNTAIN: | Alright |
| BARNES: | Alright I'm right here at Home Depot I'll be right there |

26. Based on my training and experience, I believe BARNES was ordering drugs from FOUNTAIN when he requested a "loaf". I am aware that drug dealers use code words to refer to drugs and the investigation did not reveal any business in which FOUNTAIN would use the word "loaf" in a common business manner.

27. Additionally, your affiant has been reviewed the wire calls, and there are almost no substantive calls between Dwayne FOUNTAIN and Martin FOUNTAIN, and zero text messages. However, surveillance observed Dwayne and Martin FOUNTAIN meet on multiple occasions. Given that Martin FOUNTAIN was distributing drugs based on drug-related communications he had on his telephone, controlled buys as well as surveilled sales from him in January through April of 2023, and the cocaine and fentanyl found in his home upon execution of the search warrants; based on your affiant's training and experience, the lack of communication between the two is indicative that both Dwayne and Martin FOUNTAIN were using applications on their devices to communicate. This is a common method drug traffickers use to avoid law enforcement detection.

28. As an example of Dwayne and Martin FOUNTAIN meeting and communicating by phone, in late May, both FOUNTAINs were observed at Grotto's along with a co-conspirator William WARREN. Martin FOUNTAIN was observed taking a bag out of Dwayne FOUNTAIN's car. The two then had a call where Dwayne asked Martin, "you straight?" to which Martin

---

[2] Similar interactions between FOUNTAIN and MITCHELL occurred on at least two other occasions through the investigation.

responded, "yup." In your affiant's training and experience, this is consistent with a confirmation call that Martin obtained drugs from Dwayne FOUNTAIN's car. The following day, during the execution of the residential search warrants, fentanyl was found at Martin FOUNTAIN's residence that matched a fentanyl brand or stamp found inside of Dwayne FOUNTAIN's residences.

### D. Identification of the TARGET DEVICE

29. As discussed above, your affiant believes that the TARGET DEVICE belongs to Martin FOUNTAIN and is the device that utilized the 302-943-8985 number. This is based on the following: 1) the TARGET DEVICE was recovered on FOUNTAIN's bed within the master bedroom where FOUNTAIN was arrested; 2) grand jury subpoena returns indicate that the 302-943-8985 number utilized by Martin FOUNTAIN, which was subject of the wire intercepts, is tied to an Apple iPhone 6S – which is consistent to the appearance of the TARGET DEVICE recovered at 7 Carolyn Court; and 3) During the federal wiretap of the 302-943-8985 number, surveillance and other law enforcement investigative techniques connected FOUNTAIN to the 302-943-8985 number, for example FOUNTAIN showing up to a predetermined drug deal location after a call or text from the wiretapped phone number to a drug buyer.

30. Moreover, the TARGET DEVICE contains important evidence as it relates to the drug conspiracy between Dwayne FOUNTAIN, Martin FOUNTAIN, William WARREN, and others. Although a wiretap was conducted on the phone number associated with the TARGET DEVICE, I am aware that cellular devices store certain location information, and that people often communicate about their location or their plans to visit certain places using their cellular devices in means and manners that are not over a telephone line, for example messaging applications and FaceTime. This evidence, along with photographs, ledgers, and other documentary evidence of FOUNTAIN's role within his DTO, and conspiracy would be relevant evidence relating to the TARGET OFFENSES.

**FORENSIC EVIDENCE**

31.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how a cellular telephone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

   a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e.     Further, in finding evidence of how a device was used, the purpose of its

use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

      f.      I know that when an individual uses an electronic device to communicate with co-conspirators or otherwise further an offense, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, and other records that indicate the nature of the offense.

      g.      A thorough search of digital media, such as the TARGET DEVICE, for evidence or instrumentalities of a crime commonly requires a qualified expert to conduct the search in a laboratory or other controlled environment. This is true for the following reason—searching digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover hidden, erased, compressed, encrypted, or password-protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

      h.      Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-

consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B or perusing all stored information briefly to determine whether it falls within the scope of the warrant. Considering these difficulties, HSI intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

32. The TARGET DEVICE is currently located at DEA's office in Dover, Delaware. The TARGET DEVICE has been secured at the DEA office since it was seized on May 17, 2023. In my training and experience, I know that the TARGET DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICE first came into the possession of law enforcement. Although this application seeks to search the TARGET DEVICE months after the conclusion of the investigation, I know that because the TARGET DEVICE was being used during the relevant timeframe of the TARGET OFFENSES and has been secured with the DEA since the seizure of the TARGET DEVICE, that the evidence sought will still be on the TARGET DEVICE.

33. **Nature of examination**: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the

13

device to human inspection in order to determine whether it is evidence described by the warrant.

34. **Manner of execution**: Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35. In summary, there is probable cause to believe that FOUNTAIN has committed the TARGET OFFENSES and that the TARGET DEVICE contains evidence, fruits, and instrumentalities of those offenses. There is probable cause that the TARGET DEVICE belongs to FOUNTAIN: it was found on the bed in his master bedroom within his residence where he was arrested, and it matches the identifying device information obtained from grand jury subpoenas. Further, there is probable cause that the TARGET DEVICE contains evidence, fruits, and instrumentalities of FOUNTAIN's crimes: it was used to coordinate drug transactions with an UC, MITCHELL, and others, as well as to communicate with Dwayne FOUNTAIN the day before their respective arrests. I therefore respectfully request that a search warrant be issued authorizing a search of the TARGET DEVICE and a seizure of any items described in Attachment B.

*Christopher Thiel*

Special Agent Christopher Thiel
Drug Enforcement Administration

Sworn to telephonically in accordance with Fed. R. Crim. P. 4.1 before me this \_\_**1st**\_\_ day of November 2024.

_____
The Honorable Sherry R. Fallon
United States Magistrate Judge

14

## ATTACHMENT A

## Property To Be Searched

This warrant applies to information associated with:

A black Apple iPhone in a black case, located at the Drug Enforcement Administration's office in Dover, Delaware, seized on May 17, 2023.



15

**ATTACHMENT B**

**Property to be Seized**

All records on the device described in Attachment A ("the TARGET DEVICE") that relate to violations of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute a Controlled Substance) and 846 (conspiracy to distribute controlled substances), and Title 18, United States Code, Section 922(g)(1) (Possession of a Firearm By a Prohibited Person) (the "SPECIFIED FEDERAL OFFENSES") involving Martin FOUNTAIN ("FOUNTAIN") and others between March 24, 2023 and May 17, 2023, including:

1. lists of customers and related identifying information;
2. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
3. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
4. any information recording FOUNTAIN's schedule or travel;
5. all bank records, checks, credit card bills, account information, and other financial records;
6. evidence of user attribution showing who used or owned the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;
7. any electronic calendars, notes, task lists, or other information relating to any person's whereabouts or activities relevant to violations of the SPECIFIED FEDERAL OFFENSES;
8. images, pictures, photographs, videos, or other visual depictions sent or

      received by the SUBJECT DEVICE regardless of the underlying program used to create, store, send, or receive such depictions relating to violations of the SPECIFIED FEDERAL OFFENSES;

9. GPS data showing the location and movement of the SUBJECT DEVICE;

10. the content of any and all text messages or instant messages sent or received by the SUBJECT DEVICE regardless of the underlying program used to send and receive those messages relating to violations of the "SPECIFIED FEDERAL OFFENSES" and/or relating to the movements or location of the user of SUBJECT DEVICE.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

17